IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| LINDA H. R., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Action No. 2:19cv632 |
| ) | |
| ANDREW SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Plaintiff Linda H. R.'s ("Plaintiff") Complaint, ECF No. 1, filed pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Defendant Andrew Saul, the Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for a period of disability and disability insurance under the Social Security Act ("SSA"). Plaintiff filed a Motion for Summary Judgment, ECF No. 9, the Commissioner filed a cross-Motion for Summary Judgment and Memorandum in Support, ECF Nos. 11–12, and Plaintiff filed a Reply, ECF No. 13. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002 Standing Order on Assignment of Certain Matters to United States Magistrate Judges. After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 9, be **GRANTED**, the Commissioner's Motion for

1

Summary Judgment, ECF No. 11, be **DENIED**, the final decision of the Commissioner be **VACATED** and **REMANDED**.

## I. PROCEDURAL BACKGROUND

On October 7, 2016, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. R. at 11.[1] Her application was initially denied on April 27, 2017, and again denied upon reconsideration on August 16, 2017. *Id.* Plaintiff then requested a hearing in front of an administrative law judge ("ALJ"), which was conducted on October 10, 2018. *Id.* Plaintiff, who was represented by counsel, testified at the hearing, as did an impartial vocational expert ("VE"). *Id.* On November 15, 2018, the ALJ issued a decision denying Plaintiff's application. R. at 18. Plaintiff then filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied on October 1, 2019. R. at 1–6. The Appeals Council denied Plaintiff's request for review because the Appeals Council found no reason under the rules to amend the ALJ's decision, making the ALJ's decision the Commissioner's final decision. *Id.*

Having exhausted her administrative remedies, on November 20, 2019, Plaintiff filed the instant Complaint for judicial review of the Commissioner's decision. ECF No. 1. The Commissioner filed an Answer on January 27, 2020. ECF No. 5. Following the afore-described summary judgment briefing, the matter was referred to the undersigned, and is now ripe for recommended disposition.

## II. RELEVANT FACTUAL BACKGROUND

Plaintiff was born on December 2, 1962 and was fifty-four years old on the date last insured. R. at 17. Plaintiff was last employed in August 2016 and has not worked since. R. at

---

[1] "R." refers to the certified administrative record that was filed under seal on January 27, 2020, ECF No. 6, pursuant to Local Civil Rules 5(B) and 7(C)(1).

2

182. Plaintiff's alleged disability onset date was December 1, 2016. R. at 10. At that time, Plaintiff lived with her family and cared for her husband. R. at 212–13. Plaintiff complained of muscle spasms, difficulty dressing and bathing. *Id.* However, Plaintiff was able to prepare meals several times a week, perform household chores and yardwork, and go outside almost every day. R. at 214–15.

A. Plaintiff's Medical History

Plaintiff previously had spinal surgery in late 2011 but returned to work in 2015 where she continued until July 2016 due to a right shoulder injury. R. at 44, 55, 176, 193. Plaintiff had surgery on her shoulder to repair a rotator cuff tear. R. 466. During a postoperative visit, Plaintiff reported that physical therapy was helpful, but she had exhausted her coverage for physical therapy visits and planned to shift to doing stretches on her own at home. R. at 471. Simultaneously, she reported pain in her left shoulder as a result of compensating for her right shoulder. R. at 471. The postoperative examination revealed that the incision from her surgery was well-healed and the injury was neurovascularly intact. R. at 472. She did have significant limitations due to capsular adhesions, i.e. frozen shoulder, that limited her range of motion. *Id.* After assessing the limited forward flexion as 90/180 and external rotation as 20/20, the doctor treated the right shoulder with a cortisone injection. *Id.*

During the relevant period from Plaintiff's alleged onset date, December 1, 2016, to the date last insured, December 31, 2016, Plaintiff had an MRI of her left shoulder to assess the previously reported pain. R. at 472, 477–78. The MRI revealed a small superior labral tear, very mild supraspinatus tendinopathy in the critical zone, mild degenerative joint disease of the acromioclavicular (AC) joint, a small bursal effusion, and very mild bicep tendinopathy. R. at 477–78. Four days later, Plaintiff saw her neurosurgical provider with complaints of lower back

3

pain that ascended her spine to the area between her shoulder blades, neck pain, decreased range of motion, and upper extremity weakness. R. at 445. The doctor's examination revealed the following: an antalgic gait, abnormal pinprick to the lower left extremity, a positive straight leg raise on the left, limited range of motion of the shoulders, and 5/5 muscle strength in her neck and all muscles of the upper and lower extremities except her deltoid muscles, which were not tested due to her shoulder condition. R. at 446–67. Plaintiff also underwent MRI's of the cervical, thoracic, and lumbar spine to further evaluate her neck and back pain. R. at 453, 457, 461. The MRI revealed disc protrusion with mild narrowing, however this was no different from prior imaging in 2010. R. at 457–58. The MRI also revealed small to moderate disc protrusion at various levels, and overall, normal cord signal with no evidence of abnormal spinal movement and only mild degeneration of the lumbar spine. R. at 461.

Shortly after her date last insured, Plaintiff returned for a neurosurgical follow up. R. at 440. She reported that her low back pain had recently worsened in December 2016. R. at 445. She also complained of neck and bilateral shoulder pain, but no muscle aches or weakness. R. at 441. She acknowledged improvement in her thoracic spine, but a shoulder examination showed continued tenderness and limited range of mobility. R. at 441–42. The remainder of her bilateral motor examination findings appeared to stay the same including arm and leg muscle strength, tone, and bulk. R. at 443. One week later, at the five-month postoperative visit, Plaintiff had an MRI on her left shoulder that revealed some tendinosis in the rotator cuff, but "not anything impressive". R. at 475. The MRI also showed a large spur, some impingement signs, and moderate to severe degeneration in the AC joint. *Id.*.

In April 2017, Plaintiff also saw a spine and sports physician, to whom she reported significant relief from pain on account of lumbar facet injections that she received in February

4

2017. R. at 629. She demonstrated normal lumbar range of motion, a gait without significant abnormality, negative straight leg raising, and full muscle testing in all areas tested. R. at 631–32. Plaintiff's last MRI of her left shoulder was in October 2017 and indicated "very mild" findings that were consistent with previous MRIs. R. at 702.

### III. THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

A sequential evaluation of a claimant's work and medical history is required in order to determine if the claimant is eligible for benefits. 20 C.F.R. §§ 404.1520, 416.920; *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). The ALJ conducts a five-step sequential analysis for the Commissioner, and it is this process that the Court examines on judicial review to determine whether the correct legal standards were applied and whether the resulting final decision of the Commissioner is supported by substantial evidence in the record. *Id.* The ALJ must determine if:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.

*Strong v. Astrue*, No. 8:10-cv-357-CMC-JDA, 2011 WL 2938084, at *3 (D.S.C. June 27, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (noting that substantial gainful activity is "work activity performed for pay or profit."); *Underwood v. Ribicoff*, 298 F.2d 850, 851 (4th Cir. 1962) (noting that there are four elements of proof to make a finding of whether a claimant is able to engage in substantial gainful activity)). "An affirmative answer to question one, or negative answers to questions two or four, result in a determination of no disability. Affirmative answers to questions three or five establish disability." *Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23,

5

2014) (citing 20 C.F.R. § 404.1520). Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law.

First, the ALJ found that Plaintiff had not engaged in substantial gainful activity between December 1, 2016 and December 31, 2016, her date last insured. R. at 12. Second, the ALJ found that Plaintiff had the severe impairments of bilateral shoulder disorders, neck disorder, back disorder, hypertension, but that all other alleged impairments were non-severe. R. at 12–13. Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR 404.1520(d), 404.1525, and 404.1526. R. at 13.

The ALJ noted that in order to satisfy the required listing, Plaintiff's impairment must be characterized by gross anatomical deformity, chronic joint pain and stiffness, with signs of limited motion. *Id.* The ALJ ultimately held, under listing 1.04(A) and the standard set out in *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013)(AR 15-1(4)), the objective and subjective findings related to her spine disorders failed to establish that these criteria were satisfied. R. at 13–14.

In keeping with his impairment finding, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) except Plaintiff was able to lift and carry fifteen pounds occasionally and ten pounds frequently. R. at 14. Plaintiff was unable to perform overhead work, but was able to reach in all other directions, as well as, push and pull occasionally with the right upper extremity and frequently with the left. *Id.* Plaintiff could not climb ladders, ropes, or scaffolds, crawl, or work with hazardous machinery or at unprotected heights. *Id.* Plaintiff was also able to stoop, kneel, and crouch occasionally. *Id.* After consideration of the evidence and expert testimony, the ALJ held that

Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record . . . ." R. at 14–15. The inconsistencies included, *inter alia*, improvements in the lumbar spine, gait, and right shoulder symptoms, as well as symptoms related to her lower extremities that did not persist for twelve consecutive months. R. at 15. In light of these inconsistencies and reported findings, the ALJ afforded little weight to the assessments of the State Agency medical consultants at Disability Determination Services ("DDS"). R. at 16. The ALJ did however afford moderate weight to the treating source opinion of Dr. Barr, regarding Plaintiff's limitations in her right arm, as it was generally consistent with the objective findings. *Id.*

An impartial vocational expert testified at the ALJ hearing. R. at 77–86. The ALJ posed to the vocational expert a series of five hypothetical questions based on an individual with similar education, employment history, and alleged impairments, with each hypothetical question including more restrictive conditions. *Id.* Pertinent to the inquiry here, the first hypothetical claimant was limited to light work, "occasionally" pushing and pulling with both upper extremities and "frequently" reaching overhead with both upper extremities.[2] R. at 78-79. The VE testified that such an individual could perform Plaintiff's past relevant work, along the following light work jobs in the national economy: mail clerk, agricultural produce sorter and rental clerk. R. at 80. The second hypothetical claimant was limited to light work, "occasionally" pushing and pulling with both upper extremities, "never" reaching overhead with both upper extremities, and "frequently" reaching in all other directions with both upper extremities. R. at 80. The VE testified that this individual could perform the same mail clerk,

---

[2] The other limitations included by the ALJ in the hypothetical questions are not at issue.

7

agricultural produce sorter, and rental clerk jobs. R. at 80-81. The third hypothetical claimant was limited to sedentary work, "occasionally" pushing and pulling with both upper extremities, "never" reaching overhead with both upper extremities, and "frequently" reaching in all other directions with both upper extremities. R. at 81. For this hypothetical, the VE testified that the sedentary jobs of document preparer, assembler, and food and beverage order clerk were available in the national economy. *Id.*

In the fourth hypothetical, the ALJ asked the vocational expert to assume additional limitations in addition to those expressed in hypothetical three: the individual could "less than occasionally" reach, push and pull with the dominant (i.e., right) upper extremity. R. at 81. The VE testified that no jobs would be available in the national economy for a claimant with these limitations, opining that "all the sedentary jobs I mentioned require frequent reaching." R. at 81-82. Upon further clarifying questioning by the ALJ, the VE explained that if the dominant upper extremity was limited to "occasional" or "less than occasional" reaching, pushing and pulling, there would be no work available at the sedentary level. R. at 82.

In the fifth hypothetical, the ALJ added symptom flare-ups, pain, and medication side effects that made the individual unable to sit, stand, or walk for more than five hours per eight-hour workday. R. at 82-83. Assuming the previously mentioned limitations alongside these added factors, the vocational expert testified that there would be no work for such an individual. *Id.*

The ALJ also asked the vocational expert whether there were any inconsistencies or conflicts between her testimony and the Dictionary of Occupational Titles ("DOT"). R. at 83. After noting that the DOT does not address the criteria regarding absences and being off-task, the VE testified "It also does not differentiate reaching, or pushing and pulling to the level of

8

right/left dominant, non-dominant. Those answers are based on my professional experience as a vocational counselor." R. at 83.

Plaintiff's counsel then examined the VE. Pertinent to the issue now, he noted that, by limiting the hypothetical claimant to only "occasional" reaching and pulling with the dominant arm, as was the example in hypothetical four, all sedentary jobs would be eliminated, according to the VE's testimony. R. at 84. He then asked whether the same dominant upper extremity limitation would eliminate light jobs as well, as set forth in hypothetical question two, and the VE affirmed that it would. R. at 85 ("Q: So what I'm asking is if we include that right upper extremity occasional limits, with the limited light, what would the result be? A: It would eliminate those jobs as well."). Following that exchange, the ALJ asked follow-up questions:

> Q: And just to follow-up, if it was occasional, but rather than less than occasional use of the right dominant upper extremity to reach, and push and pull, would there be any work at the light exertional level consistent with hypotheticals one and two?
> A. I'm sorry, if you're saying – reaching is occasional?
> Q: Right. So, I guess, what is the reaching requirement? Maybe the best way to ask it is – start here, what is the reaching requirement for the mail clerk, the agricultural produce sorter, and the rental clerk?
> A: They are – the rental clerk is occasional. The other two are frequent for reaching.
> Q: And what about the receptionist, and the office administrator?
> A: Both of those are frequent.

R. at 85-86.

After review of the vocational expert's testimony, the ALJ concluded that Plaintiff was unable to perform her past relevant work as a receptionist, cashier supervisor, dental assistant, and office manager. *Id.* Nonetheless, while Plaintiff was not able to resume her prior employment, the ALJ determined that Plaintiff was capable of performing the rental clerk job as it was generally performed in the national economy. R. at 17. Therefore, the ALJ determined that Plaintiff was not disabled, as defined by the SSA, from the alleged onset date, December 1,

9

2016, through her date last insured, December 31, 2016. R. at 18.

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). "Even if substantial evidence supports the Commissioner's factual findings in support of a benefit denial, a district court may reverse if the ALJ committed errors of law." *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 764 (W.D. Va. 2002). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

## V. ANALYSIS

Plaintiff presents two claims of error: first, the ALJ's finding is contrary to the VE's testimony that no jobs remain for someone with Plaintiff's limitations; second, under *Pearson v. Colvin*, 810 F.3d 204 (4th Cir. 2015), there is an unexplained conflict between the VE's testimony, the DOT, and SCO descriptions of the reaching requirements for the rental clerk job.

### A. The ALJ's finding is contrary to the VE's determination that no jobs remain.

As previously stated, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record, and whether the correct legal standard was applied. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). As demonstrated by the cited testimony of the VE, a significant degree of ambiguity was presented in the VE's testimony discussing whether certain jobs were available in the national economy given the various limitations posited in the several hypothetical questions. The questioning of the VE and the manner in which the ALJ presented the series of hypotheticals, and the VE's answers to those questions, was confusing at best, rendering the undersigned unable to determine if substantial evidence supported the ALJ's decision. Given the ambiguity in the VE's testimony, the ALJ should have better clarified in her hypotheticals the specific limitations she wished to incorporate in relation to the particular jobs the VE testified were available for someone with the pertinent limitations.

In her decision, the ALJ ultimately found, in light of the severe impairments and limitations at issue, Plaintiff would have been able to perform the requirements of the representative occupation of rental clerk. R. at 17–18. Plaintiff does not contest the limitations found by the ALJ with respect to her RFC. The essence of the dispute revolves around whether substantial evidence supported the ALJ's conclusion that the rental clerk job is one that Plaintiff

could perform given her RFC. The specific RFC limitation at issue was Plaintiff's inability to reach overhead and only "occasional" ability to reach in all other directions with her dominant upper extremity. Plaintiff contends that the VE testified that such a limitation precluded all jobs based on the hypotheticals posed. The Commissioner contends that the VE, upon the ALJ's redirect examination requesting clarification, clearly confirmed that the rental clerk job only required occasional reaching. Thus, argues the Commissioner, the rental clerk job was available for Plaintiff to perform. The problem is that this subsequent testimony appears to have directly contradicted her prior testimony, and this contradiction was never explained.

After reviewing the evidence in the record, the ALJ determined that Plaintiff was unable to "perform overhead work, but was able to reach in all other directions, push, and pull occasionally with the right (dominant) upper extremity and frequently with the left (nondominant) upper extremity." R. at 14. Plaintiff could stoop kneel, and crouch occasionally, but she could not climb ladders, ropes, or scaffolds, crawl, or work with hazardous machinery or at unprotected heights. *Id.* This coincides with the hypotheticals relayed to the VE at the hearing. R. at 78–80. After considering the series of hypotheticals posed by the ALJ, the VE testified that if reaching ability in her right upper extremity was limited to "occasional" or less than occasional, it eliminates all jobs, even at the light level. R. at 82.

> Q. Now, the fourth hypothetical, the one that addressed dominant right upper extremity restrictions as to reaching and pulling being occasional, if that had been added to the first or second hypotheticals, those are the ones that are still at light, would that alter the answers as to the past work or the alternative jobs in any way?
> So I know that if we add the occasional reaching and pulling with the right arm to only occasional, and place that at sedentary, that knocks out the past work, and the other sedentary jobs.
> So what I'm asking is if we include that right upper extremity occasional limits, with the limited light, what would the result be?
> A. It would eliminate those jobs as well.

12

> Q. Okay. So it really doesn't matter if the RFC is light or sedentary, given this — given the contours here, once the right upper extremity gets down to occasional reaching, and pulling, that knocks it out?
> A. Oh, I'm sorry, number four was less than occasional
> Q. Right.
> A. Yes.

R. at 84–85. In contrast, later on redirect examination, the VE testified that the rental clerk position only required "occasional" reaching.

> Q. And just to follow-up, if it was occasional, but rather than less than occasional use of the right dominant upper extremity to reach, and push and pull, would there be any work at the light exertional level consistent with hypotheticals one and two?
> A. I'm sorry, if you're saying — reaching is occasional?
> Q. Right, So, I guess, what is the reaching requirement? . . . . what is the reaching requirement for the mail clerk, the agricultural produce sorter, and the rental clerk.
> A. They are—the rental clerk is occasional. The other two are frequent for reaching.

R. at 85–86.

By this testimony, there appears to be an unexplained contradiction. The VE initially testified that no jobs would be available once reaching and pulling was restricted to occasional, whether at the sedentary or light work level, then she testified that the rental clerk position only required occasional reaching without reconciling her earlier remark that no jobs would be available with that restriction. This is an unexplained contradiction that in turn falls to the ALJ to resolve. *See Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990) ("[I]t is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence."). The ambiguity is compounded by the fact that the question regarding the rental clerk job and the occasional reaching requirement was devoid of any other RFC limitation to help clarify the necessary context. R. at 84–85. Plaintiff correctly points out that the question was not in the form of a hypothetical, which should have posited all

13

of Plaintiff's limitations as reflected in the RFC, but instead was a specific question asking only about the reach limitation for the rental clerk job. R. at 79–83. Because the VE's contradictory testimony was not clarified by the ALJ, the undersigned cannot determine if substantial evidence supports the ALJ's finding that the rental clerk job was available for someone with Plaintiff's RFC.

### B. There is an unresolved conflict between the VE testimony, the DOT, and SCO descriptions of the RFC demands for the rental clerk position

In keeping with the ALJ's affirmative duty, SSA regulations require an ALJ to do more than merely ask a vocational expert whether his testimony conflicts with the DOT. *See Pearson v. Colvin*, 810 F.3d 204, 208–09 (4th Cir. 2015). The ALJ instead must identify conflicts independently and resolve all obvious conflicts before relying on the testimony of the VE. *Id.*

Inasmuch as the undersigned is recommending remand so that the ALJ can clarify the ambiguity in the VE's testimony regarding the availability of jobs for someone with Plaintiff's RFC, so too should the ALJ clarify the ambiguity in the VE's testimony regarding any conflict between her findings and the DOT. Because of that ambiguity, the undersigned cannot determine if substantial evidence supports the ALJ's conclusion without reconciling the apparent conflict.

The ALJ did ask the VE if there were "any inconsistencies, or conflicts apparent or otherwise, between [her] testimony and the DOT". R. at 83. However, this question alone is insufficient under the SSR standard clarified in *Pearson*. Pursuant to *Pearson*, the ALJ is required to cure the apparent conflict by identifying it independently from the VE, assessing the nature of the conflict, and eliciting further testimony from the VE. *See Pearson*, 810 F.3d at 209. Merely, asking the VE if there is a conflict does not fulfill this duty.

Nevertheless, the VE's attempt to explain the conflict with the DOT presents more ambiguity than clarity. The VE testified "[the DOT] does not differentiate reaching, or pushing or pulling to the level of right/left dominant, non-dominant." R. at 83. Both parties interpreted this statement differently, further demonstrating the extent of the ambiguity and apparent conflict. Plaintiff took this to mean that the reference to "reaching, or pushing or pulling" is a unitary reference dealing only with the difference between performing all of those actions with dominant versus the non-dominant hands. ECF No. 10 at 10. Plaintiff argues that this does not therefore resolve the conflicting restrictions set out in the ALJ's RFC, the DOT, and the SCO. *Id.* On the other hand, the Commissioner deems this a reasonable explanation of the conflict and took this to mean two separate things: the DOT makes no differentiation when it comes to reaching, and no differentiation when it comes to pushing or pulling with the dominant, non-dominant hand. ECF No. 12 at 20–21. Since this testimony can be taken either way, it is ambiguous and does not satisfactorily explain whether any conflicts with the DOT have been reconciled. Since the ALJ has a duty to clarify such conflicts with the DOT, she should have done more to have the VE explain the extent and nature of the conflict. Without additional explanation, the undersigned is compelled to recommend remand for the ALJ to elicit further explanation of the discrepancy.

## VI. RECOMMENDATION

For the reasons stated herein, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 9, be **GRANTED**, the Commissioner's Motion for Summary Judgment, ECF No. 11, be **DENIED**, and the final decision of the Commissioner be **VACATED** and **REMANDED**.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
January 25, 2021